PER CURIAM.
We review a petition for habeas corpus filed by Linroy Bottoson, a prisoner under sentence of death. We have jurisdiction under article V, section 3(b)(9) of the Florida Constitution.
*1303 Bottoson was charged with the first-degree murder of Catherine Alexander. During voir dire in Bottoson’s 1981 murder trial, the State exercised one of its peremptory challenges to strike juror Newton. Bottoson’s counsel immediately raised the following objection:
Your Honor, for the record, I would like it to be known that Mr. Newton was the only black juror that had been tentatively seated that the State has just excused. I believe, again, that this is of [sic] deliberate exclusion on the part of the Prosecution because the Defendant in this ease is also a black man, and, again, I don’t believe we’re getting a cross representation of the citizens that will hear Mr. Bottoson’s case as in this here group. I move this Court to dismiss the panel and declare a mistrial.
The trial judge summarily denied the defense counsel’s motion. The all-white jury that was impaneled found Bottoson guilty of first-degree murder and recommended death. The trial judge imposed the death penalty.
Bottoson’s appellate counsel did not raise the jury issue in Bottoson’s direct appeal. In December of 1983, this Court affirmed Botto-son’s conviction and sentence. Bottoson v. State, 443 So.2d 962 (Fla.1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984). This Court issued its decision in State v. Neil, 457 So.2d 481 (Fla.1984), seven months after we had denied the motion for rehearing in Bottoson’s direct appeal. The United States Supreme Court denied Botto-son’s petition for certiorari four days later.
In Neil, this Court distinguished Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and decided for the first time to permit inquiry into whether a party was discriminating on a racial basis through its exercise of peremptory challenges. We explained:
The initial presumption is that perempto-ries will be exercised in a nondiscriminatory manner. A party concerned about the other side’s use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race. If the court finds no such likelihood, no inquiry may be made of the person exercising the questioned peremptories. On the other hand, if the court decides that such a likelihood has been shown to exist, the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors’ race.
Id. at 486-87 (footnote omitted).
In 1985, Bottoson filed a motion for post-conviction relief, raising the question of whether the State improperly used its peremptory challenges to remove racial minorities from the venire. This motion was denied in 1993, and this Court affirmed the trial court’s denial of relief in January of 1996. Bottoson v. State, 674 So.2d 621 (Fla.1996). We found that Bottoson’s Neil claim was procedurally barred because he had failed to raise the issue in his direct appeal. Bottoson now files this petition for habeas corpus, asserting ineffective assistance of appellate counsel for failing to raise the Neil issue in his direct appeal.
Bottoson argues that the issue of the discriminatory use of a peremptory challenge had been preserved in the trial court and that his appellate counsel was ineffective for failing to argue this issue. Even though this Court’s decision in Neil had not yet been decided, Bottoson says that appellate counsel should have anticipated it because by that time the courts of three other states had made decisions comparable to Neil. He also says that our decision in Neil was issued at a time when his petition for certiorari from our opinion affirming his conviction and sentence was still pending in the United States Supreme Court. Thus, he argues that counsel *1304 was also ineffective for failing to petition this Court to withdraw its mandate before the United States Supreme Court denied his petition for certiorari.
The State argues that the ineffectiveness claim is not a basis for relief because the peremptory challenge claim was not preserved for review. See State v. Castillo, 486 So.2d 565, 565 (Fla.1986) (“A timely objection must be raised and the state must be given an opportunity to demonstrate that the use of a peremptory challenge was not motivated solely by race.”). The State goes on to point out that it was apparent from the voir dire that the State exercised its challenge because juror Newton said he was reluctant to impose the death penalty. In view of our disposition of this petition, we need not decide the merits of these contentions. For purposes of this opinion, we shall assume that the ineffectiveness claim was preserved for appellate review and that Bottoson would have been entitled to a new trial had Neil been decided at the time his appeal .was before this Court.
We cannot say that Bottoson’s appellate counsel was ineffective for failing to anticipate our decision in Neil. The governing case law at the time was Swain, in which the United States Supreme Court had held that before a defendant could obtain relief from the State’s exclusion of blacks from trial juries through peremptory challenges it would be necessary to demonstrate that such exclusion was occurring “in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be.” Swain, 380 U.S. at 223, 85 S.Ct. at 837. The United States Supreme Court’s decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which embraced the concept of Neil, was not decided until two years after our opinion in Neil. See Pitts v. Cook, 923 F.2d 1568, 1574 (11th Cir.1991) (no ineffectiveness for not raising Batson v. Kentucky claim before release of that decision).
Moreover, Bottoson’s appellate counsel was not ineffective for not moving this Court to recall its mandate when the Neil decision was decided while his petition for certiorari was still pending before the United States Supreme Court. Even if counsel had moved quickly enough to file such a motion within the four days that Bottoson’s petition for certiorari remained pending, this Court would have denied his motion. Section 25.051, Florida Statutes (1983), mandated that this Court “shall hold two terms in each year ... commencing respectively on the first day of January and July.” As we made clear in State Farm Mutual Automobile Insurance Co. v. Judges of the District Court of Appeal, 405 So.2d 980, 982-83 (Fla.1981), “[a]n appellate court’s power to recall its mandate is limited to the term during which it was issued.” We denied rehearing on Bot-toson’s direct appeal on February 7, 1984, and the opinion in Neil was not released until September 27, 1984. Because our January term of court had terminated before Neil was issued, we would not have been in a position to recall the mandate.
Accordingly, we deny Bottoson’s petition for habeas corpus.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
KOGAN, C.J., and ANSTEAD, J., concur in result only.